1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KARAMEN BALLARD,                    No.  2:11-cv-2576 JAM AC PS

12              Plaintiff,

13        v.                             FINDINGS & RECOMMENDATIONS

14   PATRICK R. DONAHOE,
     POSTMASTER GENERAL,
15

16              Defendant.

17        Pending before the court is defendant Patrick R. Donahoe's December 18, 2013 motion

18   for summary judgment.  Plaintiff opposes the motion.  On February 13, 2014, this matter was

19   submitted on the briefs.  Having reviewed the motion and the documents filed in support and

20   opposition, THE COURT FINDS AS FOLLOWS:

21                          UNDISPUTED FACTS[1]

22        In 2009, plaintiff Karamen Ballard, a member of the National Postal Mail Handlers

23   Union, worked as a Part-Time Regular Mail Handler for the United States Postal Service

24   ("USPS") in Stockton, California, at its Processing and Distribution Center.  Garcia Decl. ¶ 5.

25   Plaintiff worked with three other part-time mail handlers in loading, unloading, and moving mail

26   from 7:00 p.m. to 1:00 a.m.  Id.; Ballard Dep. 85:24-86:25 (Boesch Decl. Ex. A).  Plaintiff and

27   _____

     [1] All facts are undisputed unless noted otherwise.
28

1

1  the other part-time mail handlers were supervised by Virginia Garcia during the first part of their

2  shift.  Garcia Decl. ¶ 5.  The last couple hours of the shift were supervised by Eladio Manzana.

3  Garcia Decl. ¶ 5; Manzana Aff. ¶ 5.  Occasionally, Juanita Mendoza would supervise the part-

4  time mail handlers.  Garcia Decl. ¶ 5; Mendoza Aff. ¶¶ 4, 5.  It is essential that the work of mail

5  employees such as plaintiff be completed in a timely, efficient manner in order to maintain the

6  USPS's mission of providing prompt and reliable mail service to its customers.  Garcia Decl. ¶ 6,

7  Ex. A.

8  A.      The Light-Duty Complaint

9           In early 2009, plaintiff took medical leave from his job.  Ballard Dep. 24:22-24 (Boesch

10  Decl. Ex. B).  On March 25, 2009, after returning from leave, plaintiff made an informal Equal

11  Employment Opportunity ("EEO") complaint, EEO Case No. 1F-953-0012-09, alleging that

12  Sharif Estes, Manager of Distribution and Operations, refused to approve plaintiff's March 11,

13  2009 request for three days of light duty upon his return from medical leave and that this

14  amounted to discrimination based on race and sex ("the Light-Duty Complaint").  Tam Decl. Ex.

15  A; Ballard Dep. 24:22-29:23 (Boesch Decl. Ex. B), Ballard Dep. 148:13-152:7 (Boesch Decl. Ex.

16  C); Boesch Decl. Ex. R.  On May 27, 2009, the Light-Duty Complaint was resolved through

17  internal mediation that resulted in an agreement to pay plaintiff $275.  Tam Decl. Ex. A.  Plaintiff

18  alleges here that the retaliation now at issue is a product of the Light-Duty Complaint and

19  mediation.  Ballard Dep. 29:3-30:11 (Boesch Decl. Ex. B).

20  B.      Plaintiff's Unscheduled Absences

21           In the six weeks after his return to full duty from medical leave in early 2009, plaintiff had

22  ten unscheduled full-day absences and one ¾-day absence.  Garcia Decl. ¶ 7, Ex. B.  Of these, the

23  first seven were ultimately categorized as unscheduled Family Medical Leave Act absences (May

24  26-30, April 1-2).  See id. Ex. B.  The remaining four were not re-categorized, however, and were

25  thus considered unscheduled leave without pay.

26           Unscheduled absences create problems since they are not approved in advance by

27  management and thus can cause staff shortages.  Garcia Decl. ¶ 7, Exs. C-D.  In addition to the

28  unscheduled absences, plaintiff called into the USPS's automated ERMS Leave System on May

2

18, 2009 and left a message noting that he would be absent from consecutive shifts on May 15, 17, and 18, 2009.  Garcia Decl. ¶ 10, Ex. E.  When plaintiff called in, the ERMS Leave System instructed plaintiff that he may be required to provide documentation to support his request.[2]  Ballard Dep. 174: 24-175:21 (Boesch Decl. Ex. D).  The USPS's policy requires supervisors to regulate unscheduled absences by speaking with employees who have excessive absences and requesting documentation.  Garcia Decl. Ex. C (ELM 511.42, 511.43), Ex. D (ELM 665.41, 665.42).  Because plaintiff's unscheduled absences followed multiple other unscheduled absences, Garcia asked plaintiff to provide documentation to support his absences.  Garcia Decl. ¶ 11.  On May 20, 2009, plaintiff submitted a note that he had written himself stating that his family had a personal emergency that prevented him from reporting to work.  See Garcia Decl. Ex. G.  When plaintiff submitted his note, Garcia explained that she needed independent verification that he was unable to work and provided examples of a tow truck or repair shop record or a doctor's note.  Garcia Decl. ¶ 11.

Plaintiff failed to submit any further documentation.  Garcia Decl. ¶ 11.  Accordingly, Garcia scheduled an investigative interview for May 27, 2009.  Id.  At the time, Garcia was not aware of any prior EEO activity by plaintiff, had not spoken with Sharif Estes regarding such activity, had not seen any EEO complaints by plaintiff, and had not attended any mediation regarding the complaint.  Id.

C.      The May 27, 2009 Investigative Interview

Neither plaintiff nor Garcia remember exactly how plaintiff was called to the May 27, 2009 investigative interview, though it was Garcia's practice to send a union shop steward to get the employee for such meetings.  Garcia Decl. ¶ 12; Ballard Dep. 38:16-40:18 (Boesch Decl. Ex. E), Ballard Dep. 42:1-24 (id. Ex. F).  Garcia declares that, prior to the interview, plaintiff did not request a consultation with the union steward.  Garcia Decl. ¶ 12, Ex. F.  In his deposition,

---

[2] In his opposition, plaintiff contends that the ERMS leave system's default message "is for employees who are on leave restriction or employee who request[s] more than three consecutive days of leave."  See Opp'n at 4.  Plaintiff, though, fails to support this assertion with citation to any evidence.

1  plaintiff denied saying anything to Garcia before the interview began.  Ballard Dep. 42:15-17

2  (Boesch Decl. Ex. F).  In a June 10, 2009 grievance, however, plaintiff complained that he was

3  denied a pre-interview consultation.  Boesch Decl. Ex. W.

4      When plaintiff arrived at the interview, he was accompanied by a union steward and

5  refused to answer any of Garcia's questions, a strategy he claims was based on a brief

6  conversation he had with the union steward on his way to the interview.  Garcia Decl. ¶ 12; see

7  also Ballard Dep. 39:8-40:18 (Boesch Decl. Ex. E), Ballard Dep. 42:9-14 (id. Ex. F).

8      Though plaintiff does not remember what happened after this interview, Garcia declares

9  that she granted plaintiff on-the-clock union time to consult with his union representative, as it is

10  her practice to permit such consultations either before or after investigative interviews based on

11  the employee's wishes.  Ballard Dep. 46:7-16 (Boesch Decl. Ex. G); Garcia Decl. ¶ 13.

12      Either later on May 27, 2009 or the next day, on May 28, 2009, a union representative

13  called Garcia to tell her that plaintiff wanted to apologize for his behavior during the interview

14  (specifically, for not answering Garcia's questions).  Garcia Decl. ¶ 13.  Plaintiff explained in his

15  deposition that when he spoke to Garcia, he only apologized for not providing her with

16  documentation.  Ballard Dep. 45:6-45:25 (Boesch Decl. Ex. G).  After the call with plaintiff,

17  Garcia granted him one more week to provide adequate documentation. Garcia Decl. ¶ 13.

18  Plaintiff, however, again failed to submit acceptable documentation.  Garcia Decl. ¶ 13, Ex. G;

19  Ballard Dep. 45:6-45:25 (Boesch Decl. Ex. G); Ballard Dep. 127:3-128:3 (id. Ex. H); Ballard

20  Dep. 174:8-177:13 (id. Ex. D).

21  D.    Letter of Warning

22      In light of plaintiff's failure to submit adequate documentation concerning his May 15, 17,

23  and 18, 2009 unscheduled absences, Garcia issued a Letter of Warning on June 8, 2009, charging

24  plaintiff with "Failure to Follow Instructions – Failure to Provide Requested Documentation."[3]

25  _____

[3]      Plaintiff asserts that consecutive absences such as those on May 15, 17 and 18, 2009, are
26  considered one occurrence per USPS regulations and that, therefore, Garcia should have had an
informal discussion with him instead of issuing a Letter of Warning.  In support, plaintiff relies
27  on an excerpted-document attached to his opposition that he titles "Progressive Discipline
Procedures."  See Opp'n, Ex. 25.  A recurring problem for plaintiff, however, is that neither this
28  (continued…)

4

1    Garcia Decl. ¶ 14, Ex. G.  Garcia wrote this letter because, as supervisor, she is responsible for

2    minimizing unscheduled absences, including by monitoring attendance and discussing attendance

3    issues with employees, and plaintiff agrees that multiple absences from work are an attendance

4    issue.  Garcia Decl. ¶ 14, Exs. C-D, G; Ballard Dep. 81:3-5 (Boesch Decl. Ex. I).  Between 2007

5    and 2009, Garcia issued similar Letters of Warning to three employees other than plaintiff for

6    attendance issues, none of whom had a history of EEO activity of which Garcia was aware.

7    Garcia Decl. ¶ 15, Ex. H.

8         After plaintiff submitted a grievance challenging the propriety of the June 9, 2009 Letter

9    of Warning, see Ballard Dep. 57:22-58:7 (Boesch Decl. Ex. J), the matter was negotiated between

10   a union representative and the USPS, with the latter ultimately reducing the Letter of Warning to

11   an "official discussion" to be held in plaintiff's personnel file for two years.[4]  Boesch Decl. Ex. S.

12   _____

13   nor many of the other exhibits attached to his opposition have been authenticated.  See Orr v.
     Bank of Am., NT & SA, 285 F.3d 764, 773-75 (9th Cir. 2002) (finding exhibits improperly

14   authenticated and thus inadmissible and stating that "[a] trial court can only consider admissible
     evidence in ruling on a motion for summary judgment"); see also Fed. R. Evid. 901.  Nonetheless,

15   the court will consider this excerpt because it was properly authenticated and submitted in support
     of defendant's motion for summary judgment.  See Tam Decl. Ex. C ("Agreement between the

16   United States Postal Service and the National Postal Mail Handlers Union"); Orr, 285 F.3d at 776
     ("When a document has been authenticated by a party, the requirement of authenticity is satisfied

17   as to that document with regards to all parties. . . ."; see also 31 Wright & Gold, Federal Practice
     & Procedure: Evidence § 7104 at 30-31 (2000) ("Once evidence offered against one party is

18   deemed authentic, its authenticity is established as against all other parties as well.").  On review,
     however, the court finds that the excerpts referred to by plaintiff do not stand for the proposition

19   that consecutive absences are considered one occurrence or that Garcia was required to first have
     a discussion with plaintiff before issuing a Letter of Warning.  See Tam Decl. Ex. C.

20   [4]   A second investigative interview was held on September 29, 2009 after plaintiff failed to

21   report to work on September 26, 2009, without submitting a prior request or and without calling
     in to the ERMS leave system, thus making him absent without leave ("AWOL").  Garcia Decl. ¶

22   7, Ex. B.  According to USPS policy, employees are considered AWOL unless "actual
     emergencies prevent them from obtaining permission in advance."  Garcia Decl. Ex. D.  The

23   policy requires the employee to later show "satisfactory evidence of the emergency," and where
     no such evidence is provided, there may be "basis for disciplinary action."  Id.

24        On September 28, 2009, during his next scheduled shift, Garcia asked plaintiff why he did

25   not call in.  Garcia Decl. ¶ 16.  Plaintiff did not respond to these questions; instead, his union
     representative told Garcia that plaintiff's medication had caused him to fall asleep.  Id.  Garcia

26   asked plaintiff to answer her questions himself, but he remained silent.  Id.  Despite not
     complying with the USPS's policy concerning AWOL behavior, plaintiff was not disciplined for

27   his September 26, 2009 absence.  Garcia Decl. ¶ 16; Ex. D.

28

1   The union representative agreed to this settlement over plaintiff's objection.  See id.

2   E.      Union Consultations

3          Between April 28, 2009 and October 2009, plaintiff requested time for on-the-clock union

4   consultations from all of his supervisors (Garcia, Manzana, and Mendoza).  Garcia Decl. ¶ 17;

5   Manzana Aff. ¶¶ 10-12; Mendoza Aff. ¶¶ 10-11.  All three supervisors allowed him on-the-clock

6   union time, not always immediately but usually within 24 hours of the request.  Garcia Decl. ¶ 17;

7   Manzana Aff. ¶¶ 10-12; Mendoza Aff. ¶¶ 10-11; Ballard Dep. 35:21-36:15 (Boesch Decl. Ex. M).

8   Plaintiff's supervisors each handled his requests exactly as they handled similar ones by other

9   employees.  See Garcia Decl. ¶ 17; Manzana Aff. ¶¶ 11-12; Mendoza Aff. ¶ 11.

10          On multiple occasions, plaintiff asked Garcia for on-the-clock consultations with a union

11   shop steward.  Garcia Decl. ¶ 17.  Garcia sometimes granted plaintiff's requests immediately,

12   though at other times she deferred the requests because work was busy or because a shop steward

13   was unavailable.  Id.  Garcia was a shop steward herself for several years prior to becoming a

14   supervisor and, as a result, appreciates the importance of these consultations.  Id.  As a supervisor,

15   Garcia attempted to balance the need to get mail processed efficiently with the desire to provide

16   on-the-clock union consultations at the time they are requested.  Id.  Occasionally, plaintiff would

17   ask to speak with a shop steward immediately even though work was busy and he was needed on

18   the floor.  Id.  Since timely mail processing is critical to the USPS's mission, Garcia would

19   schedule on-the-clock union consultations around mail operations.  Id.  As was her practice with

20   other employees, Garcia would sometimes tell plaintiff he could have his on-the-clock

21   consultation when it was convenient for work operations and when a steward was available.  See

22   id. (declaring that she handled union requests in 2009 by the following other employees in the

23   same way that she handled plaintiff's requests: E.S. Mail Handler, Mexican American male, EEO

24   activity; D.D. PTR Mail Handler, Caucasian female, no known EEO activity; K.C. Mail Handler,

25   Indian female, no known EEO activity; Y.L., Clerk, Chinese female, no known EEO activity; and

26   N.S., Clerk, African American female, no known EEO activity).  Other times, she would allow

27   employees, including plaintiff, to meet with a steward right away.  Id.  It was Garcia's practice

28   with all her employees, including plaintiff, to allow on-the-clock meetings with stewards within

1   24 hours of the request per her understanding of the union agreement.  Id.

2          Plaintiff's other supervisor, Mendoza, typically did not allow on-the-clock union time

3   immediately, but did so within 24 hours of the request and scheduled around work needs.

4   Mendoza Aff. ¶ 11.  One time, Mendoza denied plaintiff's request for union time and

5   immediately corrected her mistake.  On June, 5, 2009, she called plaintiff in for an investigative

6   interview.  Id. ¶ 10.  When plaintiff asked for a pre-interview consultation, Mendoza denied his

7   request as she thought the request was informal, and the interview was conducted with a union

8   steward present.  Id.  Mendoza later learned, though, that plaintiff was entitled to a pre-interview

9   union consultation upon request.  Id.  She corrected her mistake by disregarding the interview and

10  discarding her notes, thus nullifying the interview.  Id.

11         Plaintiff's third supervisor, Eladio Manzana, typically provided union time to employees,

12  including plaintiff, as soon as a steward was available.  Manzana Aff. ¶¶ 10-12.

13         Plaintiff challenges these assertions, claiming that three of his requests for union time

14  were denied by each of his supervisors.  Plaintiff first requested union time from Garcia on

15  October 19, 2009, a request she denied on the ground that a shop steward was unavailable.  See

16  Opp'n, Ex. 18; Garcia Aff. ¶ 12 (Opp'n, Ex. 1).  She told plaintiff that his request would be

17  granted the following day.  At his next scheduled shift, plaintiff requested union time from

18  Manzana, who also denied the request on the ground that no steward was available.  Manzana

19  Aff. ¶¶ 10-12.  On October, 22, 2009, when plaintiff requested union time from Mendoza (his

20  third request), she granted plaintiff's request, though plaintiff asserts that he was not actually able

21  to consult with a union representative that day.  Mendoza Aff. ¶¶ 10-11; Opp'n, Ex. 18.

22  F.     Vacation and Schedule-Change Requests

23         Garcia and Manzana supervised the same mail handlers but at different points during a

24  shift.  Garcia Decl. ¶ 18; Manzana Aff. ¶ 5.  In early 2009, employees could direct vacation and

25  schedule-change requests to either Garcia or Manzana.  Garcia Decl. ¶ 18.  Eventually they ended

26  up short-staffed one day as they had not coordinated their responses to such requests.  Id.  From

27  then on, Sharif Estes, Garcia and Manzana's supervisor, instructed that Garcia should handle all

28  requests so as to avoid this problem.  Id.  In June 2009, Garcia approved plaintiff's vacation

1    request for June 24 through June 29, 2009.  Garcia Decl. ¶¶ 7, 19, Ex. B.

2            1.    <u>Vacation Requests</u>

3         On June 19, 2009, Garcia asked plaintiff to submit the rest of his vacation requests for the

4    year at that time, explaining that he had missed vacation sign-ups early in the year because he was

5    out on leave and that he should put in the rest of his requests right away.  Garcia Decl. ¶ 19.  She

6    did this to assist in planning, so she could ensure adequate mail-handling coverage for any

7    additional vacation dates plaintiff requested.  <u>Id.</u>  Garcia explained to plaintiff that he should

8    request additional dates at that time, as later requests would be considered incidental and granted

9    at management's discretion based on operational needs.  <u>Id.</u>  Plaintiff did not submit any

10   additional vacation requests at that time.  <u>Id.</u>; <u>see also</u> Ballard Dep. 95:21-96:1 (Boesch Decl. Ex.

11   P).

12        In October 2009, plaintiff submitted a new vacation request.  Garcia Decl. ¶ 20; Mendoza

13   Aff. ¶ 23; Ballard Dep. 169:1-17 (Boesch Decl. Ex. L; <u>see also</u> <u>id.</u>, Ex.T).  At that time, plaintiff

14   did not have any accrued vacation leave to cover his request and therefore was requesting leave

15   without pay ("LWOP").  Garcia Decl. ¶ 20; Mendoza Aff. ¶ 23.  The USPS's policy requires

16   management to carefully examine LWOP requests, considering the needs and costs to the USPS

17   before granting the request.  Garcia Decl. ¶ 20, Ex. J.  Garcia considered and denied plaintiff's

18   October 2009 LWOP request based on operational needs: how much mail required processing on

19   the days he requested and the number of mail handlers scheduled to work.  Garcia Decl. ¶ 20.

20   Plaintiff submitted another request to Mendoza, who also ultimately denied plaintiff's LWOP

21   request.  Boesch Decl. Ex. T; Garcia Decl. ¶ 20; Mendoza Aff. ¶ 23.

22            2.    <u>Schedule-Change Requests</u>

23        Between April 28, 2009 and October 2009, plaintiff submitted multiple schedule-change

24   requests to both Garcia and Mendoza.  Garcia Decl. ¶ 21; Mendoza Aff. ¶ 20.  Some of these

25   requests were approved and others were denied.  <u>Id.</u>  These approvals and denials were dictated

26   according to the need for adequate mail-handler coverage each day.  Garcia Decl. ¶ 21;  Mendoza

27   Aff. ¶ 22.  These requests were handled in the same way for other employees.  Garcia Decl. ¶ 21,

28   Mendoza Aff. ¶ 21.

G.      Plaintiff's Work Performance

        In early 2009, Garcia often saw plaintiff standing around instead of working, and, as she did with other employees, would sometimes urge him to work.  Garcia Decl.¶¶ 22-23.  Manzana also noticed that plaintiff was not completing work assigned to him.  Manzana Aff. ¶ 13.

        In the summer of 2009, Garcia noticed plaintiff and another mail handler, Lakveer Kaur, standing around talking instead of working.  Garcia Decl. ¶ 23.  Garcia asked why they were talking and asked if they did not have any work to do.  Id.  While Garcia tried to find them tasks, plaintiff began to raise his voice.  Id.  Garcia asked plaintiff if he wanted to talk in the office, and he told her he had nothing to say to her.  Id.  Garcia then asked plaintiff to lower his tone and instructed plaintiff and Kaur to go on break for no more than 20 minutes, which they did.  Id.  In an EEO complaint filed on November 18, 2009, plaintiff discussed this incident, claiming that he and many other mail handlers were waiting for work and alleging that it was Garcia, and not him, who yelled.  See Boesch Decl. Ex. U at P-00241.

        In the fall of 2009, Garcia went into the letter breakdown area and saw plaintiff and mail handler, Natalie Montes, standing around talking.  Garcia Decl. ¶ 23.  Garcia asked both employees whether they had checked for mail in two different areas and was told that they had.  Id.  Garcia told them to go on break as there was no mail.  Id.  Garcia treated plaintiff and Montes the same during this incident.  Id.

        As far as Garcia knows, neither Montes nor Kaur had any history of EEO activity.  Id.  During both the incident with Kaur and the incident with Montes, Garcia's purpose in speaking to the employees was to promote productivity and achieve the USPS's mission to quickly and efficiently deliver mail.  Id.

H.      Second Equal Employment Opportunity Complaint

        On June 12, 2009, plaintiff contacted an EEO counselor about claims of retaliation and hostile work environment based on the Light-Duty Complaint and claims of discrimination based on race (African American) and sex (male).  Boesch Decl. Ex. V.[5]  On September 16, 2009,

---

[5] In his EEO Investigative Affidavit, plaintiff cites the initial filing of this complaint as both June (continued…)

9

1   plaintiff filed a formal EEO complaint (EEO Case No. 1F-953-0019-09).  Id.  Over the course of

2   the proceedings on that complaint, plaintiff withdrew the allegations regarding race and sex

3   discrimination, maintaining only his claims of retaliation and hostile work environment.  See Tam

4   Decl. Ex. B at USPS_002609 n.2.  The administrative proceedings that followed considered the

5   alleged retaliation that occurred through October 2009.  Id. at USPS_002609.  On February 24,

6   2011, the Administrative Law Judge granted the USPS's motion for summary judgment because

7   plaintiff had failed to come forward with sufficient evidence to create a genuine issue of material

8   fact.  Tam Decl. Ex. B.

9          Garcia was unaware of plaintiff's EEO activities until she attended an August 27, 2009

10  mediation regarding the complaint that led to this lawsuit.  Garcia Decl. ¶ 24; Estes Decl. ¶ 4.

11  Sharif Estes never discussed plaintiff's EEO activity with Garcia, Manzana, or Mendoza.  Estes

12  Decl. ¶ 4; see also Ballard Dep. 148:13-152:7 (Boesch Decl. Ex. C).  As of December 2009,

13  Manzana had heard that plaintiff had filed a prior EEO complaint, but did not know the details.

14  Manzana Aff. ¶¶ 8-9.  Mendoza also did not know of plaintiff's EEO activity until December

15  2009, but found out when he was asked to submit an EEOC affidavit.  Mendoza Aff. ¶¶ 8-9.

16         Since September 2009, plaintiff has filed multiple additional EEO complaints (January

17  2010, Case No. 1F-953-0013-10; March 2010, Case No. 1F-953-0020-10; March 2011, Case No.

18  1F-953-0020-10; and June 2013, Case No. 1F-957-0041-13).  See Cabato Decl. Ex. A.

19                      RELEVANT PROCEDURAL BACKGROUND

20         Plaintiff filed a complaint against Patrick Donahoe, Postmaster General, on September 30,

21  2011, and is proceeding on a first amended complaint filed January 1, 2012.  The amended

22  complaint asserts that defendant retaliated against plaintiff after the latter filed an EEO complaint.

23  ECF No. 4 at 1.  Plaintiff alleges retaliation, as evidenced by Garcia's demand for documentation

24  regarding plaintiff's unscheduled absences, Garcia's issuance of a Letter of Warning, his

25  supervisors' refusal to grant his requests to meet with union representatives, and his supervisors'

26  _____

27  8 and June 12.  Boesch Decl. Ex. U at P_00258.  Since defendant cites the date as June 12 and
    plaintiff appears to agree with this, for the purposes of the following analysis, June 12 will be
    presumed the correct date.

28

10

1   denial of his vacation and schedule-change requests.  Plaintiff contends the supervisors treated

2   him differently than other, similarly-situated employees.  Plaintiff also asserts a claim for hostile

3   work-environment based on alleged harassment that he experienced at the hands of his

4   supervisors.  Finally, plaintiff brings a claim for infliction of emotional distress and for "Failure

5   to Take Steps to Prevent Harassment."

6       Following the closure of discovery, defendant moved for summary judgment on the

7   grounds that plaintiff cannot show that his supervisors treated him differently from other

8   employees.  Specifically, defendant claims plaintiff fails to meet his burden of establishing a

9   prima facie case of retaliation as he did not allege any adverse actions, provide evidence of

10  causation, or show evidence of retaliatory intent.  Even supposing plaintiff has met his burden,

11  defendant alleges plaintiff is unable to rebut the USPS's legitimate, non-discriminatory reasons

12  for its actions.  Finally, defendant claims plaintiff's allegations of a hostile work environment fail

13  as he cannot show evidence of harassment.

14                          LEGAL STANDARDS

15      Federal Rule of Civil Procedure 56(a) allows the court to "grant summary judgment if the

16  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

17  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Initially, the moving party bears the burden

18  of showing there exists no genuine issue of material fact, however "the moving party need only

19  prove that there is an absence of evidence to support the non-moving party's case."  Celotex

20  Corp. v. Catrett, 477 U.S. 317, 323-325 (1986).

21      Once this has been met, the burden shifts to the opposing party to show a genuine issue as

22  to any material fact does exist.  Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S.

23  574, 585 (1986).  To do so, the opposing party must establish the existence of a factual dispute

24  that is both material and genuine.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

25  To demonstrate materiality, the party is charged with showing the factual dispute affects the

26  outcome of the claim under the governing law.  Anderson 447 U.S. at 248; Fortune Dynamic, Inc.

27  v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010) (quoting

28  Anderson, 477 U.S. at 248).  To show the factual dispute is genuine, the opposing party must

                                     11

1    assert evidence "such that a reasonable jury could return a verdict for the nonmoving party."

2    FreecycleSunnyvale v. Freecycle Network, 626 F. 3d 509, 514 (9th Cir. 2010) (quoting Anderson,

3    477 U.S. at 248).

4         In order to meet these requirements, the non-moving party must show support by "(A)

5    citing to particular parts of materials in the record, including depositions, documents,

6    electronically stored information, affidavits or declarations, stipulations . . . , admissions,

7    interrogatory answers, or other materials; or (B) showing that the materials cited do not establish

8    the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

9    evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). However, the opposing party

10   "must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec.

11   Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

12        In resolving a motion for summary judgment, the evidence of the opposing party is to be

13   believed. See Anderson, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn

14   from the facts must be viewed in a light most favorable to the opposing party. See Matsushita,

15   475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).

16   However, the opposing party "must do more than simply show that there is some metaphysical

17   doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of

18   fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S.

19   at 586-87 (citation omitted).

20                                    DISCUSSION

21        Plaintiff asserts four claims in his amended complaint: (1) his supervisors retaliated

22   against him for his prior EEO activity, (2) his supervisors created a hostile work environment, (3)

23   defendant inflicted emotional distress, and (4) the USPS failed to take steps to prevent

24   harassment. Defendant seeks summary judgment only on plaintiff's retaliation and hostile work

25   environment claims and argues that plaintiff's infliction of emotional distress claim is barred

26   pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2675(a). For the reasons set forth

27   here, the undersigned will sua sponte recommend summary judgment pursuant to Federal Rule of

28   Civil Procedure 56(f) on plaintiff's claim that defendant failed to take steps to prevent

                                          12

1  harassment.

2  A.      Defendant's Motion for Summary Judgment

3      Defendant maintains that (1) plaintiff's retaliation claim fails because he cannot meet his

4  burden in showing that his supervisors retaliated against him, and (2) that plaintiff's hostile work

5  environment claims fails because he cannot show that the supervisors' actions constituted

6  harassment.

7      1.      Retaliation

8      Title VII prohibits retaliation against a person who has exercised his rights under Title VII

9  of the Civil Rights Act of 1964 ("the Act") by claiming discrimination or seeking to enforce the

10  Act's provisions.  42 U.S.C. §2000e-3(a).  "The complainant in a Title VII trial must carry the

11  initial burden under the statute of establishing a prima facie case of racial discrimination."

12  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  In order to meet his burden in a

13  case of Title VII retaliation, the plaintiff-employee must plead and prove three elements: (1) his

14  involvement in a protected activity under Title VII proceedings; (2) his further mistreatment or

15  discharge by the defendant-employer; and (3) the existence of a causal connection between the

16  original Title VII action and the mistreatment or discharge.  EEOC v. Hacienda Hotel, 881 F.2d

17  1504, 1512 (9th Cir. 1989) (overruled on other grounds); Westendorf v. West Coast Contractors

18  of Nevada, Inc., 712 F.3d 417, 422 (9th Cir. 2013).  In establishing the first element, an employee

19  does not have to demonstrate the merits of the underlying discrimination complaint, simply that

20  his claim was based on a good faith, reasonable belief that a Title VII violation had occurred.

21  Sumner v. U.S. Postal Service, 899 F.2d 203 (2d Cir. 1990).

22      If a plaintiff meets his burden of establishing a prima facie case, then the defendant bears

23  the burden of production to show a plausible, legitimate, and nondiscriminatory purpose for the

24  action taken against the employee.  Ray v. Henderson, 217 F. 3d 1234, 1240 (9th Cir. 2000); see

25  also McDonnell Douglas Corp. 411 U.S. at 807.  If the defendant meets this, the burden is shifted

26  back to the plaintiff to show defendant's provided reason for the action is pretextual and a

27  retaliatory motive remained.  Id.

28  ////

a.      Exhaustion of Administrative Remedies

Before addressing the merits of plaintiff's claim, defendant first argues that plaintiff is limited in his retaliation claim to those incidents that have been properly exhausted through administrative remedies.  According to defendant, this amounts to allegations dating from April 28, 2009 through the end of October 2009.

Generally, employees of the federal government must exhaust administrative remedies before bringing a civil action.  Absent exhaustion, federal courts lack jurisdiction.  42 U.S.C. 2000e-16(c).  To properly exhaust a complaint against a federal employer, the employee "must first attempt to resolve the matter by filing an informal complaint that triggers counseling by an EEOC Counselor."  Bullock v. Berrien, 688 F.3d 613, 616 (9th Cir. 2012).  If the matter is not resolved, "the employee must then file a formal complaint for decision by an Administrative Law Judge."  Id.  When the suit alleges retaliatory activity as a result of a previously filed administrative claim, though, a second administrative claim may be unnecessary.  Gupta v. East Texas State University, 654 F.2d 411, 414 (5th Cir. 1981).  In such a case, the exhaustion requirement may be met if the plaintiff includes the original discrimination charges and the resulting investigation in his federal claim.  Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1986).

Defendant is correct that "to establish subject matter jurisdiction over his Title VII retaliation claim, [a plaintiff] must have exhausted his administrative remedies by filing a timely charge with the EEOC" before filing suit in court.  Vasquez v. County of Los Angeles, 349 F. 3d 634, 644 (9th Cir. 2003).  The EEOC must be contacted within 45 days of the alleged discrimination in order for the charge to be considered timely.  29 C.F.R. §§ 1614.103(a), 1614.105(a)(1).  Although "§1614.105 'does not carry the full weight of statutory authority' and is not a jurisdictional prerequisite for suit in federal court, [the Ninth Circuit has] consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court."  Kraus v. Presidio Trust Facilities Div./ Residential Management Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (quoting Lyons v. England, 307 F. 3d 1092, 1105 (9th Cir. 2002)).

14

1    Plaintiff first requested counsel for his retaliation claim on June 12, 2009.  The ALJ was

2    limited by the applicable regulations to consideration of events that occurred within the preceding

3    45 days, or beginning on April 28, 2009.  The ALJ noted that his ruling considered allegations

4    existing through October 2009.  Tam Decl. Ex. B USPS_002609.  Because the administrative law

5    judge considered events from April 28, 2009 through October 2009, only those matters are

6    exhausted and can form the basis of plaintiff's civil claim.  There is no evidence of waiver,

7    estoppel, or equitable tolling here, and so consideration of plaintiff's allegations remains limited

8    to those considered in the administrative proceedings.

9    Defendant also argues that plaintiff's claim for infliction of emotional distress is barred

10   because he failed to exhaust the FTCA's administrative remedies.  The FTCA requires plaintiffs

11   to exhaust their administrative remedies before filing suit.  See 28 U.S.C. §§ 2401(b), 2675(a).

12   The FTCA's exhaustion requirement is jurisdictional and must be strictly construed in favor of

13   the United States.  Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006) (citation

14   omitted).  The administrative claim requirement mandates that a plaintiff present a claim to the

15   appropriate federal agency within two years of the date that the claim accrues, or the claim is

16   barred.  See 28 U.S.C. § 2401(b).  Because plaintiff has admitted that he did not file a claim under

17   the FTCA, his claim for infliction of emotional distress is barred.  See Ballard Dep. 133:10-25

18   (Boesch Decl. Ex. O).

19                  b.    Analysis

20                        i.    Prima Facie Case—Plaintiff's Burden

21   Turning now to plaintiff's retaliation claim, under the burden-shifting test outlined above,

22   plaintiff must first show a prima facie case of Title VII retaliation.  To meet this burden, he must

23   prove three factors: (1) his involvement in a protected activity under Title VII proceedings; (2) his

24   further mistreatment or discharge by the defendant-employer; and (3) the existence of a causal

25   connection between the original Title VII action and the mistreatment or discharge.  EEOC v.

26   Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir. Cal. 1989) (overruled on other grounds);

27   Westendorf v. West Coast Contractors of Nevada, Inc., 712 F.3d 417, 422 (9th Cir. 2013).

28   Defendant does not dispute that plaintiff's EEO claim constitutes the requisite protected

15

1    activity.  Accordingly, plaintiff has satisfied the first factor.  Defendant, however, argues that

2    plaintiff fails to satisfy the remaining two factors – that is, plaintiff cannot show the existence of

3    an adverse employment action and is further unable to provide evidence of causation.

4                              (a)      Adverse Employment Action

5            The Ninth Circuit takes an expansive view of the types of action that qualify as an adverse

6    employment action.  See Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9th Cir. 2004).

7    An adverse employment action is any action "reasonably likely to deter employees from engaging

8    in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).  Accord

9    Burlington N. and Santa Fe Ry. Co., 548 U.S. 53, 68 (2006) (stating that "a plaintiff must show

10   that a reasonable employee would have found the challenged action materially adverse, which in

11   this context means it well might have dissuaded a reasonable worker from making or supporting a

12   charge of discrimination.") (internal quotation marks and citations omitted).

13          The EEOC Compliance Manual has defined "adverse employment action" under Title VII

14   retaliation as "any adverse treatment that is based on a retaliatory motive and is reasonably likely

15   to deter the charging party or others from engaging in protected activity."  EEOC Compliance

16   Manual Section 8, "Retaliation," ¶ 8008 (1998).  The EEOC Guidelines are not binding on courts,

17   but "they 'constitute a body of experience and informed judgment to which courts and litigants

18   may properly resort for guidance.'"  Ray, 217 F.3d at 1243 (quoting Meritor Savings Bank v.

19   Vinson, 477 U.S. 57, 65 (1986) (quoting in turn Skidmore v. Swift & Co., 323 U.S. 134, 140

20   (1944)).  The Ninth Circuit has applied the EEOC test in determining the presence of Title VII

21   retaliation by considering "lateral transfers, unfavorable job references, and changes in work

22   schedules."  Ray, 217 F.3d at 1243.  Such actions, the court found, "are all reasonably likely to

23   deter employees from engaging in protected activity."  Id.  The circuit court went on to explicitly

24   adopt the EEOC deterrent standard as it "is consistent with our prior case law and effectuates the

25   language and purpose of Title VII."  Id.

26          Plaintiff asserts four instances of adverse treatment: (1) receipt of the June 8, 2009 Letter

27   of Warning, (2) participation in multiple investigate interviews, (3) the delayed receipt or non-

28   receipt of union consultations, and (4) the denial of requests for vacations and schedule changes.

                                                  16

1   Defendant argues that none of these actions caused plaintiff harm and thus would not have

2   deterred any reasonable employee from EEO activity.

3                                    • Letter of Warning

4       As to the June 8, 2009 Letter of Warning, the undisputed facts establish that (1) Garcia

5   issued the Letter to address plaintiff's failure to follow instructions—namely, failure to provide

6   requested documentation regarding his unscheduled absences on May 15, 17 and 18, 2009; (2)

7   these three consecutive absences came after multiple unscheduled absences in the previous three

8   months; and (3) this Letter of Warning was later reduced to an "official discussion."

9       Defendant moves for summary judgment on the ground that a Letter of Warning does not

10  constitute an adverse action under Title VII.  Numerous courts have held that such a letter,

11  standing alone, does not constitute an adverse employment action.  See, e.g., Krause v. City of La

12  Crosse, 246 F.3d 995, 1000 (7th Cir. 2001) ("a letter of reprimand is not an adverse employment

13  action unless the letter is accompanied by some other action, such as job loss or demotion"); Ezell

14  v. Potter, 400 F.3d 1041, 1048 (7th Cir. 2005) ("a letter of warning is generally considered

15  insufficient to qualify as an adverse employment action"); Johnson v. Potter, 2011 WL 2360360,

16  at *7 (E.D. Cal. June 9, 2011) ("A USPS letter of warning does not constitute an adverse action

17  for purposes of Title VII in the discrimination context").  Here, there is no evidence of any

18  accompanying adverse action, such as job loss, demotion, or suspension.  There is also no

19  evidence that the Letter was used in subsequent disciplinary proceedings.

20      Even if the court finds, as some courts have, that a Letter of Warning can constitute an

21  adverse action because of its potential to be used for increased disciplinary action in the future,

22  see, e.g., Delia v. Donahoe, 862 F. Supp. 2d 196, 212 (E.D.N.Y. 2012), this potential was

23  extinguished once the Letter became an "official discussion," as the Mail Handlers' union

24  contract states that discussions are not discipline and cannot be used to later support discipline.

25  Tam Decl. Ex. C at Article 16 Discipline Procedure, Section 2 Discussions.  See also Rivers v.

26  Potter, 2007 WL 4440880, at *5 (D.N.J. 2007).

27      Accordingly, the undersigned finds that because the Letter of Warning was later reduced

28  to an "official discussion," it does not constitute an adverse employment action.

1          • Investigative Interviews

2          Defendant next asserts that the May 2009 and September 2009 investigative interviews

3    were simply discussions regarding plaintiff's attendance issues and could not constitute an

4    adverse action for purposes of a retaliation claim because they, in and of themselves, had no

5    negative consequences for plaintiff.

6          Courts have consistently found that participation in investigative interviews, standing

7    alone, does not constitute punishment or grounds for discipline and therefore would not deter a

8    reasonable employee from engaging in protected activity.  Chapman v. U.S. Postal Service, 442

9    Fed. Appx. 480, 484 (11th Cir. 2011); Abdallah v. Napolitano, 909 F. Supp. 2d 196, 206

10   (W.D.N.Y. 2012) ("[T]here is ample case law to support the finding that requiring an employee to

11   participate in investigative interviews . . . 'will not establish the adverse conduct required to make

12   a prima facie case' of disparate treatment under Title VII") (internal citation omitted); Rozenfeld

13   v. Dep't of Design & Const. of City of New York, 875 F. Supp. 2d 1989 (E.D.N.Y. 2012)

14   ("[I]nstructing Plaintiff to appear for an interview, without more, cannot be construed as an

15   adverse employment action for the purposes of Title VII . . ."); Sprouse-Hudson v. Donahoe,

16   2012 WL 5359774, at *11 (N.D. Tex. 2012) ("Plaintiff's remaining grievances regarding

17   investigative interviews, the letter of warning, increased surveillance, poor treatment by Saxton,

18   his recommendation of her removal, and the offensive email plaintiff received, cannot meet the

19   standard for adverse employment actions in the context of a discrimination claim, as they do not

20   constitute ultimate employment decisions."); Lee v. Hawaii, 2010 WL 235009, at *7 (D. Haw.

21   2010) ("Perhaps recognizing that an investigation is not, without more, an adverse employment

22   action, . . ."); Seymour v. U.S. Postal Service, 2010 WL 1254933, at *12 (W.D. Tenn. 2010)

23   ("The Court finds that a reasonable employee would not find the request for an investigative

24   interview materially adverse.").

25         Insofar as an investigative interview can be deemed adverse if it leads to an adverse

26   consequence, see, e.g., Schiffer v. Potter, 2009 WL 982159, at *12 (D. Colo. 2009), the

27   undersigned finds that none of the investigative interviews at issue led to adverse consequences.

28   The May 2009 investigative interview did result in a Letter of Warning, but this Letter was later

1   reduced to an "official discussion" and it has already been determined <u>supra</u> that this did not

2   constitute an adverse employment action.  The September 2009 investigative interview resulted in

3   no disciplinary action whatsoever, despite plaintiff having failed to show up or even notify

4   defendant of his absence on a day he was scheduled to work.

5        Perhaps recognizing that an investigative interview is not in and of itself adverse action,

6   <u>see</u> Opp'n at 6 ("I'm sure other employees have been given investigative interviews for their

7   attendance"), plaintiff argues that the interviews that he participated in amounted to adverse

8   action in light of the following additional facts.  First, plaintiff contends that Garcia's request for

9   documentation concerning his May 15, 17, and 18, 2009 absences was targeted mistreatment

10  since his previous absences "would not be considered excessive" and he was "disciplined for

11  absences supported by medical documentation."  Notwithstanding the evidentiary problems

12  associated with an assertion not made in a declaration but instead in an opposition that was not

13  signed under penalty of perjury and also lacking any evidentiary support, <u>see</u> 28 U.S.C. § 1746,

14  the undisputed facts establish that, of the 11 unscheduled absences that predated these May 15,

15  17, and 18, 2009 absences, only seven were re-categorized as unscheduled Family Medical Leave

16  Act absences.  The remaining four were not re-categorized, and plaintiff has not offered any

17  evidence that Garcia's actions were targeted mistreatment as opposed to compliance with USPS

18  policy regarding unscheduled absences, which totaled seven such absences as of the May 2009

19  investigative interview.

20       Plaintiff next claims that, following the September 2009 investigative interview, Garcia

21  threatened him with a seven-day suspension.  But plaintiff again fails to show adverse action.  It

22  is true that threats may rise to the level of an adverse employment action if, under the particular

23  circumstances, those threats would have deterred a reasonable employee from making or

24  supporting a charge of discrimination.  <u>See</u> <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>,

25  548 U.S. 53, 68 (2006); <u>Lee v. Winter</u>, 439 F. Supp. 2d 82, 85 (D.D.C. 2006) (finding threat of

26  reduced compensation constitutes materially adverse action after <u>Burlington</u>); <u>see also</u> <u>Williams</u>

27  <u>v. W.D. Sports, N.M., Inc.</u>, 497 F.3d 1079, 1090 (10th Cir. 2007) ("We do not doubt that a

28  reasonable employee could well find . . . a combination of threats and actions taken with the

1    design of imposing both economic and psychological harm sufficient to dissuade him or her from

2    making or supporting a charge of discrimination.").  But here, assuming that Garcia indeed made

3    such a statement[6] and setting aside plaintiff's recurring evidentiary problems, plaintiff cannot

4    show adverse treatment because (1) no actual action was taken following this investigative

5    interview, and (2) plaintiff has not shown that such a statement would have deterred a reasonable

6    employee from making or supporting a charge of discrimination.

7         Lastly, plaintiff contends that the frequency and harassing and punitive nature of the

8    investigative interviews amounts to adverse action.  In support, plaintiff claims that he was

9    subjected to additional investigative interviews on October 16, 2009 and October 26, 2009 after

10   being accused of being AWOL.  Plaintiff fails to show any actual harm resulting from these

11   interviews, fails to submit any evidence showing that the number of these interviews was

12   excessive compared to other employees, and fails to submit any evidence showing that the

13   interviews were unwarranted.

14        The undersigned therefore finds that the investigative interviews were not an adverse

15   action.

16                           • Union Consultations

17        Plaintiff also contends that defendant's failure to provide union consultations right away

18   constituted adverse action.  The undisputed facts before the court show that plaintiff's union

19   consultations were at times granted immediately upon his request, and when they were not

20   granted immediately, they were handled the same as all other employee requests for union

21   consultation.  Garcia Decl. ¶ 17; Manzana Aff. ¶ 10-12; Mendoza Aff. ¶10-11.  Any delay in

22   granting meetings was dictated by work needs and the availability of union stewards, but plaintiff

23   was granted on-the-clock meeting time within 24-hours of his requests or at his next shift.

24        In opposition, plaintiff refers to his three back-to-back requests submitted on October 19,

25   21, and 22, 2009 to Garcia, Manzana, and Mendoza, respectively.  Opp'n, Ex. 18.  He claims that

26

27   ────────────────────────────
     [6] Garcia denies having made this threat.  See Opp'n, Ex. 1 ¶ 17 ("I never mentioned a 7 Day
28   Suspension.").

                                    20

on October 19, 2009 he requested union time from Garcia, who purportedly denied the request on the ground that a shop steward was unavailable.  Although plaintiff counters that a shop steward became available that night, he has not submitted any evidence to establish a dispute of fact.  Plaintiff may not rest upon mere allegations or denials of defendant's evidence and must instead produce admissible evidence that shows a genuine issue of material fact exists for trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000); Nelson v. Pima Cmty. College Dist., 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

Plaintiff also claims that on October 21, 2009 he requested union time from Manzana, who purportedly said "maybe later" but failed to grant the request by the end of the shift.  Opp'n, Ex. 18.  Manzana disputes this account, declaring that plaintiff made his initial request on October 19, 2009, but because there were no union stewards available that day and because plaintiff was not scheduled to work on October 20, 2009, Manzana provided him with a union steward on his next shift, October 21, 2009.  Manzana Aff. ¶ 10.

Assuming for purposes of this motion that Manzana failed, as plaintiff alleges, to provide union time to plaintiff on October 21, 2009, the evidence establishes that plaintiff's request was granted after he asked Mendoza for union time on October 22, 2009.  Opp'n, Ex. 18.  Although plaintiff claims that he did not receive the union time by the end of his shift, he admits that his request was granted, ostensibly within 24 hours of October 21, 2009.

But even assuming again that plaintiff's requests for union time were not granted in a timely manner (or at all, as he claims with regard to the May 2009 investigate interview with Garcia), the court will nonetheless recommend grant of defendant's motion due to plaintiff's failure to establish causation, discussed below.

- Vacation and Schedule-Change Requests

Lastly, plaintiff asserts that the denials of his vacation and schedule-change requests amount to adverse action.  Defendant argues that the denial of some scheduling change requests is

21

a trivial employment action that would not deter a reasonable employee from EEO activity. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) ("[O]nly non-trivial employment actions that would deter reasonable employees from complaining . . . will constitute actionable retaliation."); Strother v. Southern California Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996) ("[N]ot every employment decision amounts to an adverse employment action."). In fact, plaintiff himself was not deterred, as established by the multiple other EEO complaints and union grievances that he filed.

In any event, defendant argues that the record establishes that many of plaintiff's requests were last-minute and would have imposed a burden on the USPS. Plaintiff counters that the dates he requested were available and allocated for his vacation periods. Again, plaintiff submits no evidence in support of this assertion. Moreover, the undisputed facts establish that plaintiff's supervisors handled the schedule change requests of other employees in the same manner that plaintiff's requests were handled. Garcia Decl. ¶ 17; Manzana Aff. ¶ 10-12; Mendoza Aff. ¶¶ 10-11. Although plaintiff is dissatisfied that so many of his requests were denied, he has not established that the denial of those vacation and scheduling change requests constitute adverse action. Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action").

(b)     Causation

Even assuming that plaintiff can establish adverse action(s), the undersigned finds that he fails to establish a triable dispute of fact regarding causation. In order to show causation, plaintiff "must establish that his . . . protected activity was a but-for cause of the alleged adverse action by [defendant]." Univ. of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013).

The facts before the court establish that Sharif Estes never discussed plaintiff's EEO activity with plaintiff's supervisors, Garcia, Manzana, or Mendoza, and Garcia declares that she did not know of plaintiff's EEO activity until August 27, 2009. Estes Decl. ¶ 4; Garcia Decl. ¶ 24. Therefore, the May 2009 investigative interview and the events surrounding it, such as Garcia's alleged failure to provide a union consultation prior to the interview and the June 2009

22

1   Letter of Warning, occurred prior to Garcia's knowledge of plaintiff's protected activity and

2   therefore could not have been caused by retaliatory intent.  Similarly, Garcia's July 2009 denial of

3   plaintiff's request for a union consultation also cannot be deemed retaliatory as it predated her

4   knowledge of plaintiff's EEO complaint.  See Opp'n, Ex. 19.

5          As to plaintiff's other supervisors, defendant points out that by December 2009, two

6   months after the period at issue here, Eladio Manzana first heard that plaintiff filed an EEO

7   complaint, but did not know any details.  Manzana Aff. ¶¶ 8-9.  Juanita Mendoza also did not

8   know about the complaint until December 2009.  Mendoza Aff. ¶¶ 8-9, 10.  Since these

9   supervisors were entirely unaware of plaintiff's protected activity during the relevant time period,

10  they cannot be deemed to have acted in retaliation.

11         Defendant also asserts that plaintiff is unable to show causation because he was in fact

12  given substantial leniency in light of his attendance and performance issues.  Defendant

13  emphasizes that plaintiff never received any formal discipline beyond a Letter of Warning despite

14  "chronic absenteeism," and contends there is no evidence that plaintiff's prior EEO activity

15  affected his managers at all, much less that it caused them to treat plaintiff more harshly than they

16  otherwise would have.

17         In his opposition, plaintiff claims that Manzana was aware that plaintiff had prior EEO

18  activity, but submits no evidence that the referenced EEO complaint is the Light-Duty Complaint

19  at issue here.  See Manzana Aff. ¶ 9 ("I heard that [plaintiff] had a prior EEO complaint, but

20  cannot recall the specifics.") (Opp'n, Ex. 4).  Plaintiff also contends that the supervisors often

21  discussed employees' EEO activity and that Mendoza admits to overhearing a conversation

22  regarding the May 27, 2009 investigative interview, but plaintiff again fails to cite to any

23  evidence in support.

24         In light of the foregoing, the undersigned finds that plaintiff fails to establish a prima facie

25  case as he has not shown the required adverse action or causation.

26                 (ii)    Nondiscriminatory Purpose

27         Assuming arguendo that plaintiff did establish a prima facie case, defendant has put forth

28  legitimate, nonretaliatory reasons for the complained-of actions.  Ray v. Henderson, 217 F.3d

1234, 1240 (9th Cir. 2000).  Defendant states that the various supervision methods that plaintiff's

managers utilized in dealing with his absenteeism were all consistent with USPS policy and with

the treatment of other employees.  The Letter of Warning and investigative interviews were in

compliance with the policy that "requires supervisors to control unscheduled absences by

speaking to employees and requesting documentation for excessive absences."  Garcia Decl. Ex.

C (ELM 511.42, 511.43), Ex. D (ELM 665.41, 665.42).  Garcia also declared that she "treated

other mail handlers, with no known history of EEO activity, in the same way."  Garcia Decl. ¶ 15,

Ex. H.  Finally, defendant asserts that it is reasonable that plaintiff's supervisors would have

taken some action in light of plaintiff's multiple unscheduled absences.

As to plaintiff's requests for on-the-clock union consultations, defendant states that these

were also handled in the same way as those of other employees, and that time was granted upon

union steward availability and the pace of workflow.  Garcia Decl. ¶17; Manzana Aff. ¶¶ 10-12;

Mendoza Aff. ¶¶10-11.  Similarly, plaintiff's requests for time off or schedule changes were

handled according to operational needs.  Garcia Decl. ¶ 21; Mendoza Aff. ¶ 22.  Additionally, by

providing examples of other employees without any known EEO activity whose union

consultation requests were handled the same as plaintiff's requests, plaintiff's supervisors showed

that they were not affected by his EEO activity, but rather were simply following protocol.

Garcia Decl. ¶ 17; Manzana Aff. ¶¶ 10-12; Mendoza Aff. ¶¶ 10-11.  With no "showing of

disparate treatment," plaintiff is unable to assert retaliation.  Brooks v. City of San Mateo, 229

F.3d at 929.  The court therefore finds that defendant has sufficiently proffered a non-

discriminatory reason for the alleged conduct.  The burden now shifts back to plaintiff.

(c)     Evidence of Pretext

In order to meet his final burden, plaintiff must demonstrate that defendant's asserted

reasons for its actions were pretextual.  Plaintiff fails to meet this burden.  As a preliminary

matter and as referenced earlier, the court finds that many of plaintiff's arguments lack

evidentiary support.  For example, in order to assert that a fact is genuinely disputed, Federal Rule

of Civil Procedure 56(c) requires "citing to particular parts of materials in the record, including . .

affidavits or declarations," and that such affidavits or declarations "must be made on personal

1  knowledge [and] set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(1)(A),

2  (4).  Plaintiff makes numerous assertions of fact, but fails to include them in a declaration or

3  affidavit.  Second, although the court may sometimes rely on facts presented in the opposition,

4  the opposition must first be signed under penalty of perjury, which plaintiff failed to do.  28

5  U.S.C. §1746.  Finally, many of the exhibits that plaintiff attaches to his opposition are not

6  authenticated as he fails to attach them to affidavits per Federal Rule of Civil Procedure 56(c) or

7  he fails to authenticate per any of the means listed in Federal Rule of Evidence 901.  Because

8  plaintiff does not submit an affidavit or declaration and because many of his exhibits are not

9  authenticated, he is left with little admissible evidence.  Orr, 285 F.3d at 773.

10       Even if plaintiff's opposition and exhibits could be considered, however, plaintiff simply

11  repeats the allegations in his amended complaint with little to no evidentiary support.  Where he

12  does elaborate, as discussed supra, plaintiff does not overcome defendant's legitimate reasons for

13  the contended actions.

14       Defendant's motion for summary judgment should therefore be granted as to plaintiff's

15  retaliation claim.  Plaintiff fails to show that any actions taken by defendant constituted

16  mistreatment as he has not shown that the actions would have dissuaded a reasonable employee

17  from engaging in protected activity, he has provided no evidence of causation, and he has failed

18  to overcome defendant's legitimate, non-discriminatory reasons for the complained-of conduct.

19            2.       Hostile Work Environment

20       Defendant also requests summary judgment as to plaintiff's hostile work environment

21  claim.  The Ninth Circuit has determined a three-part test for Title VII hostile work environment

22  claims.  Under this test, an employee "must show that (1) he was subject to verbal or physical

23  conduct due to his membership in a protected class; (2) that the conduct was unwelcome; and (3)

24  that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's

25  employment and create an abusive or hostile work environment."  Gregory v. Widnall, 153 F.3d

26  1071, 1074 (9th Cir. 1998).

27       Plaintiff bases his hostile work environment claim on those occasions when he felt

28  berated, humiliated, and harassed by his supervisors, with the at-issue conduct mirroring the

1    allegedly retaliatory actions related to his Title VII retaliation claim.  See Ballard Dep.107:10-18

2    (Boesch Decl. Ex. N).  Plaintiff also specifically refers to the Summer 2009 incident when Garcia

3    allegedly yelled at plaintiff and Kaur for standing around talking instead of working.  Ballard

4    Dep. 105:2-107:8 (Boesch Decl. Ex. N).  This claim therefore is premised on Garcia yelling at

5    plaintiff (though she also allegedly yelled at the other employee), plaintiff's participation in

6    investigative interviews, his receipt of a Letter of Warning (later reduced to an "official

7    discussion"), the denial of his requests for union consultations, and the denial of his requests for

8    vacation and schedule-changes.

9           On review, the undersigned finds that plaintiff fails to meet the three-part test for hostile

10   work environment.  He fails, for example, to present any evidence, direct or circumstantial, that

11   any of the defendant's conduct was due to plaintiff's membership in a protected class.  He also

12   presents no evidence that the conduct was so severe or pervasive as to alter the conditions of his

13   employment.  The record simply does not support a claim for hostile work-environment.  See

14   Vasquez v. County of L.A., 349 F.3d 634, 642-43 (9th Cir. 2003) (affirming summary judgment

15   where plaintiff merely produced evidence that, over the course of a year, her employer yelled at

16   him on two occasions, made false complaints against him, and made two disparaging remarks

17   about his race); see also Sanchez v. Santa Ana, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990)

18   (holding that no reasonable jury could have found a hostile work environment despite allegations

19   that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted

20   Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate

21   police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were

22   Latino); Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864 (9th Cir. 2001) (hostile

23   work environment found where male employee was called vulgar names and taunted regarding

24   his sexuality at least once a week, though often multiple times a day); Brooks v. City of San

25   Mateo, 229 F.3d 917, 924 (9th Cir. 2000) (incident where co-worker touched female employee's

26   stomach and breast under her sweater found to be egregious, but did not reasonably change the

27   terms and conditions of her employment).

28          Plaintiff has not produced any direct or circumstantial evidence of animus.  Plaintiff has

1   not shown discriminatory verbal or physical conduct while at work.  His hostile work

2   environment claim mimics his other claims in the lawsuit, but those allegations do not go to a

3   claim for a hostile work environment.  In the absence of any evidence that supports the elements

4   of a hostile work environment claim, summary judgment must be granted on that count.

5   B.      Judgment Independent of the Motion

6       Plaintiff also presents a claim accusing defendant of failing "to take steps to prevent

7   harassment," for which he seeks injunctive relief.  See First Am. Compl. at 3.  Although

8   defendant does not address this claim in his moving papers, the court will recommend summary

9   judgment pursuant to Federal Rule of Civil Procedure 56(f).  Under Rule 56(f), "[a]fter giving

10  notice and a reasonable time to respond," the court may "grant summary judgment for a

11  nonmovant."  Fed. R. Civ. P. 56(f).  "[D]istrict courts are widely acknowledged to possess the

12  power to enter summary judgments sua sponte, so long as the losing party was on notice that she

13  had to come forward with all of her evidence."  Celotex Corp., 477 U.S. at 326.  "A district court

14  maintains the discretion to grant a non-moving party summary judgment, even where the

15  nonmovant does not file a cross-motion for summary judgment."  Acton v. City of Columbia,

16  Mo., 436 F.3d 969, 980 n.5 (8th Cir. 2006).

17      Plaintiff's claim for "Failure to Take Steps to Prevent Harassment" is construed as one

18  arising under California Government Code § 12940(k), which makes it unlawful for an employer

19  "to fail to take all reasonable steps necessary to prevent discrimination and harassment from

20  occurring."  To maintain a cause of action under this provision, plaintiff must establish that "(1)

21  [he] was subjected to discrimination, harassment or retaliation; (2) defendant failed to take all

22  reasonable steps to prevent discrimination, harassment or retaliation; and (3) this failure caused

23  plaintiff to suffer injury, damage, loss or harm."  Leland v. City & Cnty. of San Francisco, 576 F.

24  Supp. 2d 1079, 1103 (N.D. Cal. 2008).  This provision also makes it unlawful for an employer to

25  fail to prevent retaliation.  Taylor v. City of Los Angeles Dep't of Water & Power, 144 Cal. App.

26  4th 1216, 1240 (2006), disapproved of on other grounds by Jones v. Lodge at Torrey Pines

27  P'ship, 42 Cal. 4th 1158 (2008).  When there is no evidence of harassment, as here, an employer

28  cannot be found to have acted unlawfully.  Ortiz v. Georgia Pacific, 1:12-cv-1033 LJO GSA, ---

1   F. Supp. 2d ---, 2013 WL 5347564, at *17 (E.D. Cal. Sept. 23, 2013).  Accordingly, summary

2   judgment should be entered on this claim.

3                                   CONCLUSION

4          Based on the foregoing, IT IS HEREBY RECOMMENDED that:

5          1.   Defendant's motion for summary judgment (ECF No. 23) be granted;

6          2.   Summary judgment be entered on plaintiff's "Failure to Take Steps to Prevent

7               Harassment" claim pursuant to Federal Rule of Civil Procedure Rule 56(f); and

8          3.   This action be dismissed with prejudice.

9          These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within fourteen days after service of the objections.  The parties are

15  advised that failure to file objections within the specified time may waive the right to appeal the

16  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  DATED: March 27, 2014

18  _____

19  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

                                        28